IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY WAYNE DENNIE | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | NO. 3-05-CV-0822-N |
| | § | |
| DOUGLAS DRETKE, Director | § | (Consolidated With: |
| Texas Department of Criminal Justice, | § | No. 3-05-CV-0823-N) |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Timothy Wayne Dennie, appearing *pro se*, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

Petitioner was convicted by a jury of aggravated robbery and sentenced to life imprisonment. His conviction and sentence were affirmed on direct appeal. *Dennie v. State*, No. 05-02-00711-CR, 2003 WL 21742282 (Tex. App.--Dallas, Jul. 29, 2003, pet. ref'd). The Texas Court of Criminal Appeals refused a petition for discretionary review. *Dennie v. State*, No. 1400-03 (Tex. Crim. App. Feb. 18, 2004). Petitioner then filed this action in federal court.[1]

---

[1] Petitioner also filed an application for state post-conviction relief at the same time he filed his federal writ. That case is still pending in the trial court. *Ex parte Dennie*, No. W01-40546-M(A). Because petitioner presented the factual and legal basis of the only claim raised in his federal writ to the Texas Court of Criminal Appeals in a petition for discretionary review, the claim has been properly exhausted for purposes of federal habeas review. *See* 28 U.S.C. § 2254(b)(1)(A).

II.

In his sole ground for relief, petitioner contends that his confession was involuntary.  More particularly, petitioner alleges that the police threatened to prosecute his girlfriend, Meghan Flowers, and take away her unborn child if he did not give a written confession.  Petitioner also claims that the police promised not to charge him in four other robberies if he cooperated with the investigation.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*, 120 S.Ct. at 1523; *see also Pondexter v. Dretke*, 346 F.3d 142, 145-46 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 2160 (2004).  Stated differently, "a federal court may grant relief when a state court has misapplied a 'governing legal

principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003), *quoting Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).

With respect to mixed questions of fact and law, a federal habeas court must give deference to state court findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.), *cert. denied*, 121 S.Ct. 508 (2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## B.

The due process clause of the Fourteenth Amendment prohibits the use of involuntary confessions resulting from coercive police conduct. *See Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 1613 (1993), *citing Miller v. Fenton*, 474 U.S. 104, 109, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985). In order to establish that his confession was involuntary, petitioner must demonstrate that it resulted from coercive police conduct and establish a link between the coercive conduct and the confession. *See United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004), *citing Colorado v. Connelly*, 479 U.S. 157, 163-65, 107 S.Ct. 515, 519-21, 93 L.Ed.2d 473 (1986). A confession is voluntary if, under the totality of the circumstances, it is the product of free and rational choice. *See United States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir.), *cert. denied*, 117 S.Ct. 264 (1996). Trickery or deceit is prohibited only "to the extent that it deprives the defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Bell*, 367 F.3d at 461.

The facts surrounding petitioner's confession were fully developed at a suppression hearing held prior to trial.  Mesquite Police Detective Kelly G. Davis testified that he advised petitioner of his *Miranda*[2] rights before interviewing him and asking for a written statement.  (Supp. Hrg. Tr. at 4).  Petitioner said that he understood those rights and agreed to waive them.  (*Id.* at 5).  On cross-examination, Davis was asked about the details of his discussions with petitioner.  When asked if petitioner was told that no other cases would be filed if he confessed to robbing Fred's Grocery Store, Davis vehemently denied that any deals were made.  (*Id.* at 24, 29).  He was somewhat more equivocal when questioned about discussions concerning Meghan Flowers and her unborn baby:

> Q.  [BY DEFENSE COUNSEL]:  Did you have a discussion with [petitioner] about Meghan Flowers, his girlfriend?
>
> A.      I don't remember any detail [sic] discussion about Ms. Flowers, no.  We talked about her, but I'm not sure what you mean.
>
> * * * *
>
> Q.      And what about Meghan Flowers, was there any discussion about what might or might not happen to her?
>
> A.      I didn't have any charges on Ms. Flowers.  Mr.--I remember Mr. Dennie not wanting Meghan involved in the robberies, but I had no indication that Meghan was involved in the robberies.
>
> Q.      Have you had any indication of that since?
>
> A.      No, ma'am.  I would have to check everything, but I believe she may have admitted to Investigator Parker that she was with him on one of them.  That's very possible.
>
> Q.      And you knew that Meghan Flowers had some warrants for her arrest, didn't you?
>
> A.      I believe she was wanted, yes.
>
> Q.      And y'all didn't arrest her?

---

[2]  *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

A.      No, ma'am.

Q.      Did you and Timothy Dennie talk about that at all, some warrants for Meghan's arrest and what might happen to her?

A.      I don't recall talking to Mr. Dennie about the warrants, but we may have very well talked about the warrants after we were done and Ms. Flowers was going home, but that was quite a while--quite a ways down the road.

Q.      Did you have any conversations with Mr. Dennie about Meghan Flowers and CPS being called about her baby or the future baby?

A.      I don't remember anything on the future baby.  I don't recall bringing CPS up to Mr. Dennie.  I don't recall that.  If she would have been taken into custody, CPS would have been called.  I mean, that's very possible.  I don't recall.

Q.      But you might have talked about CPS with him?

A.      I may have ma'am.  I can't say that I didn't.  I can't say that I did.

(*Id.* at 21-23).

Petitioner also testified at the suppression hearing.  He said that two police officers held a gun to his head and told him to cooperate with detectives if he cared about Meghan and her baby. (*Id.* at 41-42).  According to petitioner, the officers stated that it was "more than likely she was going to be charged and if I didn't cooperate, well, then it was going to look bad for her and the baby because CPS had already been called." (*Id.* at 42).  When petitioner was interviewed at the police station, he said that Detective Davis promised to call ATF and make sure they did not file any gun cases against him. (*Id.* at 45).  Petitioner testified that he signed a written confession only because "I was informed that if I didn't cooperate, that Meghan would have that baby in prison and it would be taken away from her also." (*Id.* at 47).

At the conclusion of the hearing, the court made detailed findings regarding the admissibility of petitioner's confession. The court found that petitioner knowingly waived his right to an attorney and that his confession was not induced by any compulsion, threats, promises, or persuasion. Although the police may have made comments about petitioner's girlfriend and her unborn child, the court found that "they were not of such a coercive or compelling nature as to overcome Mr. Dennie's free will to make the [confession.]" (*Id.* at 56). On direct appeal, the appellate court was unable to conclude that "statements made by police that appellant should cooperate and that Flowers might be charged were of any benefit to appellant or of such an influential nature as would likely cause him to speak untruthfully." *Dennie*, 2003 WL 21742282 at *4. Petitioner has failed to establish that the state court's resolution of this mixed question of fact and law is unreasonable in light of the conflicting evidence presented at the suppression hearing. *See Barnes v. Johnson*, 160 F.3d 218, 225 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 1768 (1999) (denying habeas relief based on state court finding that police actions were not coercive and did not render confession involuntary); *Muniz v. Johnson*, 132 F.3d 214, 219 (5th Cir.), *cert. denied*, 118 S.Ct. 1793 (1998) (same); *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 1567 (1998) (same). Accordingly, this ground for relief should be overruled.

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon

grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th

Cir. 1996).

DATED:  August 26, 2005.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE